520 S.E.2d 815

**Margaret Gail ROGERS, Appellant,**

**v.**

**KUNJA KNITTING MILLS, U.S.A. and Insurance Company of North America, Respondents.**

**No. 3029.**

Court of Appeals of South Carolina.

Heard April 15, 1999.

Decided July 26, 1999.

Rehearing Denied Oct. 9, 1999.

534

E.N. Zeigler, of Zeigler & Graham, of Florence, for appellant.

Michael E. Chase, Turner, Padget, Graham & Laney, of Columbia, for respondents.

HOWELL, Chief Judge:

In this workers' compensation action, Margaret Gail Rogers appeals the circuit court's affirmance of the full commission's order determining that her claim was barred by the doctrine of res judicata. We reverse and remand.

## I.

Rogers worked in Kunja's knitting department from February 1988 to November 1989. As part of her employment, Rogers was required to clean knitting machines with Shima oil, which caused a rash and other problems on her hands and face.

On November 16, 1990, Rogers filed a workers' compensation claim (the 1990 Claim), alleging that exposure to Shima oil and other chemicals caused her to suffer from chronic dermatitis on her hands and face. Rogers first described her problem as an accidental injury, but amended her claim to alternatively characterize the condition as an injury by accident or an occupational disease.

The single commissioner denied Rogers's claim, concluding that it was not timely filed. The full commission affirmed the decision of the single commissioner. The circuit court, however, reversed, concluding that the commission's decision was not supported by the evidence in the record.

This Court reversed the decision of the circuit court and reinstated the findings of the full commission, concluding that the circuit court exceeded its authority by weighing the evidence. *See Rogers v. Kunja Knitting Mills, Inc.*, 312 S.C. 377, 440 S.E.2d 401 (Ct.App.1994). Although the Supreme

Court granted certiorari, it dismissed the writ as improvidently granted. *See Rogers v. Kunja Knitting Mills, Inc.,* 318 S.C. 187, 456 S.E.2d 918 (1995).

On April 16, 1993, after the circuit court issued its order on the 1990 Claim, but before this Court issued its opinion, Rogers filed a Form 50 claiming she sustained a compensable injury to multiple body organs and systems based on prolonged exposure to toxic chemicals from February 1988 until October 1989 (the 1993 Claim). She alleged that the true nature of her disease was not discovered until October 21, 1992. In the accompanying cover letter, Rogers questioned whether this claim should be a claim for change of condition or a new claim based upon newly discovered medical information. The commission informed Rogers that the Form 50 could not be processed while the 1990 Claim was pending on appeal.

On October 22, 1993, Rogers wrote a letter to the commission stating that "the new Form 50 dated April 16, 1993, is, in fact, a claim for a new occupational disease based upon newly discovered medical diagnosis." Rogers later explained to the commission:

In the previous action, Mrs. Rogers sought compensation for chronic dermatitis, a skin disease....

The claim which was filed for Mrs. Rogers on April 16, 1993, is a new claim for an occupational disease, based upon a diagnosis of toxic exposure (systemic) made on October 21, 1992, and although collaterally related to the skin problem, the diagnosis is a new and different diagnosis.

After the Supreme Court's dismissal of the writ of certiorari in connection with the 1990 Claim, a hearing was held on the 1993 Claim. Although Rogers briefly testified, the single commissioner determined that the res judicata question should be resolved before further testimony was given. After reviewing Rogers's current medical records and the transcript and records from the 1990 Claim, the commissioner concluded that res judicata barred Rogers from proceeding with the 1993 Claim, stating that "[t]he claim for benefits for alleged injuries resulting from exposure to Shima oil starting in February, 1988 has been denied by a final adjudication and may not be heard a second time." The single commissioner's decision was affirmed by the full commission and by the circuit court.

## II.

On appeal, Rogers contends the full commission erred in concluding that the 1993 Claim is barred by the doctrine of res judicata. We agree.

Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit.

*Plum Creek Dev. Co. v. City of Conway,* 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) (citations omitted). In this case, there is no dispute concerning the identity of the parties or the finality of the prior judgment. The issue, then, is whether the subject matter of Rogers's current claim is the same as that of the prior claim such that it could have been adjudicated in Rogers's prior workers' compensation claim.

In her amended Form 50 filed in connection with the 1990 Claim, Rogers alleged that she suffered from an occupational disease that caused "[s]evere skin burns to [the] hands." Rogers listed the body parts affected as "hands, fingers, fingernails, face, [and] neck." Under "serious bodily disfigurement," Rogers listed "chemical burn scar on right cheek near eye, neck, unsightly hands, fingers, fingernails, skin on hands thick, rough, sometimes cracks." Rogers contended the injuries were caused by "working in special oil," and that Kunja "did not warn of caustic nature of oil nor provide protective gloves." The Form 50 also listed "[e]xposure of workers to caustic chemicals, concealing hazard from workers, failure to protect safety of workers," as further grounds of the claim.

In the amended Form 50 filed with the 1993 Claim, Rogers alleged that she suffered from an occupational disease affecting "multiple body organs and systems" caused by "[p]rolonged exposure to toxic chemicals." Rogers listed the body parts affected as "neurotoxicity, musculoskeletal, immune sys-

tem, skin, ear, nose, throat, [and] vision." Rogers claimed disfigurement in the form of chemical burn scars and loss of hair.

Thus, a simple comparison of the 1990 Form 50 with the 1993 Form 50 indicates that the claims are not the same. In the 1990 Claim, Rogers sought compensation for dermatitis and chemical burns to her hands and face. In the 1993 Claim, however, Rogers sought compensation for failure of her internal organs and systems.[1] While Rogers testified at the hearing on the 1990 Claim that she suffered from pain in the joints of her hands and general malaise, there is simply no evidence in the record before us that Rogers suffered from or complained of systemic problems or multiple organ failure at that time. In fact, the single commissioner's order denying the 1990 claim discussed only a dermatitis claim; there is no discussion of any other injury or claim. Moreover, the only evidence in the record indicates that it was not until October 21, 1992, well after the hearing on the 1990 Claim, that Rogers was diagnosed with her current condition, which was described by a physician with the Center for Environmental Medicine as "Acute and Chronic Toxic Chemical Intoxication." Given the differences in the injuries claimed by Rogers in the 1990 Claim and the 1993 Claim, it appears to this Court that Rogers's current claim was not litigated in the prior action, nor could it have been litigated. *See Hilton Head Center of S.C., Inc. v. Public Service Comm'n of S.C.*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987) (Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit.").

---

1. In its brief, Kunja contends that from "the very first Form 50 [filed with the 1990 Claim] it is clear that Rogers claimed an 'occupational disease resulting in disability to various body parts and organs due to exposure to caustic chemicals.'" Similar statements appear in the orders of the circuit court and the single commissioner. We have carefully reviewed the entire record and cannot find any support for these statements. As noted above, Rogers's Form 50 filed in connection with the 1990 Claim alleged injury to her hands, face, and neck, while the Form 50 filed in connection with the 1993 Claim alleged injuries to her organs and internal systems. Nowhere in the first Form 50 is there an allegation of injury to "multiple body organs and systems."

■ Kunja, however, contends that because Rogers sought compensation in the 1990 Claim for an occupational disease caused by exposure to chemicals, the 1993 Claim is barred by res judicata because it too involves a claim of an occupational disease caused by exposure to chemicals. We disagree.

The causes of the conditions at issue in the 1990 Claim and the 1993 Claim appear to be the same—exposure to caustic chemicals, particularly Shima oil. Contrary to the full commission's conclusion, however, exposure to Shima oil or other chemicals is not an occupational disease, but instead is the alleged to be the *cause* of an occupational disease.[2] The occupational disease or condition alleged in the 1990 Claim was chronic dermatitis, while the occupational disease or condition alleged in this action is, in the terms of Rogers's physician, chronic toxic chemical intoxication.

Clearly, the same period of exposure to the same chemicals or other agents can give rise to various separate and distinct diseases or conditions. *See Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.*, 219 Cal.App.3d 1265, 268 Cal.Rptr. 699, 703, 704 (1990) (noting medical testimony that "four different disease processes have been linked to asbestos exposure: asbestosis, pleural plaques, diaphragmatic calcifications, and malignant mesothelioma.... [W]hile malignant mesothelioma and asbestosis are often seen together, ... they are in fact separate and distinct pathological disease processes" and concluding that claimant's "mesothelioma was an entirely separate and distinct disease process resulting in an entirely separate and distinct injury and disability [from claimant's previously compensated asbestosis]"), *review denied* (July 10, 1990). In this case, there is no medical or other evidence establishing that the conditions alleged in 1990 Claim and the 1993 Claim are the same. Instead, the only evidence in the record indicates that the claims in fact are separate and distinct. The commission's conclusion that the conditions

---

2. In her order concluding that the 1993 Claim was barred by res judicata, the single commissioner stated that "[i]t is clear that the previous claims ... were for the same alleged occupational exposure as now claimed in the present action.... [T]he present claim involves the same allegations of occupational disease (exposure to shima oil), which was claimed in [the 1990 Claim.]" The full commission adopted the findings and conclusions of the single commissioner.

were the same simply because they were caused by the same period of exposure to the same chemical, therefore, cannot stand. *See* S.C.Code Ann. § 1–23–380(A)(6) (Supp.1998) (An appellate court "may reverse or modify the decision [of an administrative agency] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are ... (d) affected by other error of law; [or] (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record."); *Baggott v. Southern Music, Inc.*, 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998) ("A decision of the Workers' Compensation Commission will not be overturned by a reviewing court unless it is clearly unsupported by substantial evidence in the record. Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action.") (citations omitted); *Suburban Propane Gas Co. v. Deschamps*, 298 S.C. 230, 233, 379 S.E.2d 301, 302 (Ct.App. 1989) ("[T]his court may reverse or modify an administrative decision if such decision is affected by errors of law, characterized by [an] abuse of discretion, or clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.").[3]

■ Kunja further contends that the 1990 Claim and the 1993 Claim are the same because in both actions Rogers alleged a "cascade" injury of the type involved in *Grayson v.*

---

**3.** In support of its argument that the 1993 Claim is barred by res judicata, Kunja relies on *Johnson v. Greenwood Mills, Inc.*, 317 S.C. 248, 452 S.E.2d 832 (1994). In *Johnson*, the workers' compensation claimant was diagnosed with a fatal skin cancer. Based on the medical testimony presented, the single commissioner concluded that Johnson's cancer was not related to her employment and therefore denied the claim. *Id.* at 250, 452 S.E.2d at 832–33. Johnson did not appeal the single commissioner's order. When Johnson later learned that her cancer was most likely caused by work-related chemical exposure, she filed a second workers' compensation claim. The Supreme Court concluded that the second claim was barred by res judicata, stating that "[a]lthough Claimant was unaware of the causal relationship between her disease and her employment at the time of the first adjudication, the issue was nonetheless litigated." *Id.* at 251, 452 S.E.2d at 833. *Johnson* thus involved a single condition and two attempts to establish the compensability of the condition, while this case involves two claims, each based upon apparently separate and distinct conditions. Kunja's reliance on *Johnson*, therefore, is misplaced.

*Gulf Oil Co.*, 292 S.C. 528, 357 S.E.2d 479 (Ct.App.1987). Again we disagree.

In this context, "cascade" is not used to describe a particular type of injury, but rather to describe the process through which gradual exposure to certain chemicals or other elements can lead to the sudden onset of a problem. For example, the claimant in *Grayson* suffered from "dysfunction of her immune system caused by chemical sensitivity to gasoline products." *Grayson*, 292 S.C. at 530, 357 S.E.2d at 480. She became ill at work, took a month off, and then returned to work after her symptoms abated. After four days of work, the claimant became "acutely ill." *Id.* She briefly returned to work a few days later and became "deathly ill." *Id.* Her doctor concluded that

the constant exposure over 19 years to the petrochemicals in her work place dysregulated her immune system resulting in an allergic or hypersensitivity cascade to her total environment, including all foods, chemicals, and her own microbiological flora. . . .

And the reason I say [cascade] is that they undergo what we would use the terminology of cascade, where *suddenly* they become universal reactors, and they react to almost everything.

*Id.* at 531, 357 S.E.2d at 480–81 (emphasis original). Thus, the *Grayson* court defined the cascade in that case as "a sudden event which brought to a climax the cumulative deleterious effects of the inhalation of petrochemical vapors in the course of the claimant's employment." *Id.* at 533–34, 357 S.E.2d at 482; *see also Taber's Cyclopedic Medical Dictionary* 326 (17th illus. ed. 1993) (defining cascade as "[t]he continuation of a process through a series of steps; each step initiates the next step until the final step is reached. The action may or may not become amplified as each step progresses").

While it may be that a cascade effect was involved in the conditions alleged in the 1990 Claim and the 1993 Claim, that fact bears no relevance to the question of whether the 1993 Claim involves the same condition or disease as the 1990 Claim. If the conditions are separate and distinct, they would remain separate and distinct even if the processes by which they developed are similar.

## III.

In conclusion, because there is no evidence in the record supporting the full commission's conclusion that the allegations in Rogers's 1993 Claim are the same as those in the 1990 Claim, the circuit court erred by affirming the commission's determination that the 1993 Claim is barred by res judicata. Accordingly, the decisions of the circuit court and the full commission are hereby reversed, and the matter is remanded to the commission for a hearing on the merits of Rogers's 1993 claim.[4]

**REVERSED AND REMANDED.**

GOOLSBY and CONNOR, JJ., concur.

---

4. On remand, Kunja of course is free to reassert its defense of res judicata and to present medical or other evidence supporting its contention that Rogers's current claim in fact is the same as her 1990 claim.