479 S.E.2d 849

**Nancy D. TREADAWAY, Respondent,**

v.

**Julian H. SMITH, Appellant.**

**No. 2600.**

Court of Appeals of South Carolina.

Heard Oct. 9, 1996.

Decided Dec. 9, 1996.

Rehearing Denied Jan. 23, 1997.

James H. Moss, of Moss & Kuhn, Beaufort, for appellant.
Harold A. Boney, Beaufort, for respondent.

HOWARD, Judge:

This is a breach of contract action in which Nancy D. Treadaway (Treadaway) sued her former husband, Julian H. Smith (Smith), for breaching a 1974 separation agreement in which Smith agreed to pay the college expenses of their two children. A jury awarded Treadaway $41,000 in damages.

On appeal, Smith asserts the circuit court lacked subject matter jurisdiction. He also contends Treadaway lacked standing and was barred by the statute of limitations, laches and res judicata. We affirm.

## FACTS

The parties married in 1959. They entered into an agreement on August 26, 1974, in which they purported to settle all property and support issues. At the time, the parties had two sons, ages fifteen and seven. The agreement stated in pertinent part:

7. [Smith] is responsible and shall pay one-half (1/2) the expenses incurred by the two minor children for private education both on the grammar school level and the high school level, and shall also be responsible for paying all expenses of both children on the college level.

\* \* \* \* \* \*

16. The covenants and performances required of the parties in this Agreement are intended to be interdependent, and if either party fails to duly perform any of her or his obligations as set forth herein, the other party shall have the right at her or his election, to sue for damages for breach hereof, or to rescind this Agreement in whole or in part, or to sue for specific performance, or to seek such other legal remedies as may be available. Nothing herein contained shall be construed to restrict or impair either party's right to exercise this election.

\* \* \* \* \* \*

18. As stated above, this final Property Settlement is entered into in contemplation of the termination of the marital relationship between [Smith] and [Treadaway], and in that regard this Agreement shall not be merged into any judgment or decree granted to either party, but shall survive the same, and shall be forever binding and conclusive on the parties.

A few weeks after signing the Agreement, on September 11, 1974, the parties obtained a Haitian divorce. The divorce decree stated in pertinent part: "[T]he Separation Agreement executed between the parties on August 26, 1974, at Hilton

Head Island, South Carolina, U.S.A., is incorporated in the present judgement [sic] with the same force and effect as if it was reproduced in its entirety, without being destroyed by the fact of its incorporation, . . . ."

Treadaway subsequently petitioned the Beaufort County family court on numerous occasions to enforce the child support provisions of the parties' agreement. By orders entered in 1975, 1976, and 1977, the family court ordered Smith to pay various amounts of child support arrearages. The family court also modified the Agreement in its 1975 order to relieve Smith of any further obligation to pay one-half of the private school tuition of the children after the 1975–76 school year.

The parties' oldest son attended the University of South Carolina from 1977 to 1979. The younger son enrolled in the Savannah College of Art and Design in the fall of 1987. Treadaway testified she and Smith discussed the oldest son's college plans and Smith approved of the decision to attend USC. Treadaway stated she sent tuition bills for the oldest son's college expenses to Smith, but received no response. After 1984, Smith moved and Treadaway was unable to locate him. As a result, she paid all of the expenses while the children attended college.

In July 1993, Treadaway filed a breach of contract action in the court of common pleas for reimbursement of the children's college education expenses pursuant to the parties' 1974 agreement.[1] Smith filed an answer in which he asserted the court of common pleas lacked subject matter jurisdiction over Treadaway's claims; Treadaway lacked standing; and the action was barred by res judicata, the applicable statute of limitations, and laches. The circuit court held it had jurisdiction over the action because the agreement was an independent contract. It also held the issue of college expenses had not been addressed by the family court; the agreement was a "sealed instrument," thus invoking a twenty year statute of limitations; and the doctrine of laches was inapplicable. A

---

1. Treadaway filed an amended complaint in which she joined the parties' children, both of whom had reached majority, as defendants because of their status as third party beneficiaries of the 1974 contract. They were apparently dismissed as parties at some point.

jury subsequently returned a verdict in favor of Treadaway for $41,000. Smith appeals.

## LAW/ANALYSIS

### I. SUBJECT MATTER JURISDICTION

Smith contends the court of common pleas lacked subject matter jurisdiction over Treadaway's claims because college expenses are a form of child support and the family court has exclusive and continuing jurisdiction over all child support matters. Treadaway argues the agreement was not merged into the divorce decree and remained a separate contract. We agree with Treadaway.

The separation agreement was executed in 1974, and therefore, this issue is controlled by the law in South Carolina prior to *Moseley v. Mosier,* 279 S.C. 348, 306 S.E.2d 624 (1983). *Austelle v. Austelle,* 294 S.C. 19, 21–22, 362 S.E.2d 181, 183 (Ct.App.1987). In *Moseley,* the supreme court decreed that thereafter "jurisdiction for all domestic matters, whether by decree or by agreement, will vest in the family court." *Moseley,* 279 S.C. at 353, 306 S.E.2d at 627. Under pre-*Moseley* law, the family court retained jurisdiction over a separation agreement only if the parties provided that the agreement had become an integral part of a court decree and had lost its character as a separate agreement. *Austelle,* 294 S.C. at 22, 362 S.E.2d at 183. However, "agreements which were incorporated but not merged furnished the family court no subject-matter jurisdiction over them." *Id.; see Bryant v. Varat,* 278 S.C. 77, 292 S.E.2d 298 (1982) (holding the family court lacked subject matter jurisdiction over a 1978 agreement incorporated but not merged into a divorce decree).

Whether an agreement retains its separate contractual character depends upon the intent of the parties. *Austelle,* 294 S.C. at 22, 362 S.E.2d at 183. In *Kelly v. Edwards,* 276 S.C. 368, 278 S.E.2d 773 (1981), our supreme court held language stating that an agreement was not merged into a decree of divorce, but survived and remained binding and conclusive despite incorporation, revealed the parties' intent that the agreement should remain contractual in nature, even though it was subsequently incorporated into a divorce decree.

The court held the family court was without subject matter jurisdiction because the dispute concerned a contractual obligation. *Id.*

■ In this case, paragraph 18 of the separation agreement provided "this Agreement shall not be merged into any judgment or decree granted to either party, but shall survive the same, and shall be forever binding and conclusive on the parties." The Haitian divorce decree stated, the agreement "is incorporated in the present judgement [sic] with the same force and effect as if it was reproduced in its entirety, without being destroyed by the fact of its incorporation...." We conclude, as did the circuit court, that the parties intended the agreement to survive incorporation. Consistent with *Kelly*, we agree the family court did not have subject matter jurisdiction over this contractual issue.

Smith argues even if the agreement remained in tact, the family court still had subject matter jurisdiction to modify the college education expenses because such expenses are a form of child support. We disagree.

■ The family court retained continuing subject matter jurisdiction to enforce and modify child support, despite any provision in the parties' pre-*Moseley* property settlement agreement which was incorporated, but not merged into a divorce decree. *Ratchford v. Ratchford*, 295 S.C. 297, 368 S.E.2d 214 (Ct.App.1988). Furthermore, under certain exceptional circumstances, parents may be required to provide support for educational expenses of emancipated children. *Risinger v. Risinger*, 273 S.C. 36, 253 S.E.2d 652 (1979). Under such circumstances, the award of college expenses is a form of child support. *Kirsch v. Kirsch*, 299 S.C. 201, 383 S.E.2d 254 (Ct.App.1989); *see* S.C. Code Ann. § 20-7-420(17) (1985).

■ However, our supreme court has differentiated between the payment of college expenses ordered as an award of child support using the *Risinger* factors and the contractual undertaking of the payment of college expenses under a separation agreement. *McDuffie v. McDuffie*, 313 S.C. 397, 438 S.E.2d 239 (1993). A parent may contractually obligate himself or herself to pay educational expenses of a child

beyond the age of majority. *Stanaland v. Jamison,* 275 S.C. 50, 268 S.E.2d 578 (1980). In *Stanaland,* our supreme court quoted with approval from the North Carolina case of *Shaffner v. Shaffner,* 36 N.C.App. 586, 244 S.E.2d 444 (1978). "[A] parent can by contract assume an obligation to his child greater than the law otherwise imposes and by contract bind himself to support his child after emancipation and past majority...." *Stanaland,* 275 S.C. at 54, 268 S.E.2d at 580 (quoting *Shaffner*); *see White v. Snell,* 299 S.C. 406, 413, 385 S.E.2d 211, 215 (Ct.App.1989) ("[T]o the extent that a separation agreement makes provision for the maintenance and support of a child past his majority, it is beyond the inherent power of the court to modify the agreement, ... parents can by contract assume an obligation to their child greater than the law otherwise imposes and ... parents may, by contract, bind themselves to support after emancipation and past majority.").

The *White* case concerned a 1976 divorce decree which approved and incorporated a separation agreement in which the father agreed to pay for his children's college educations. *Id.* Our court held as long as the language of the decree and agreement is plain and unambiguous, there is no room for construction or interpretation. *Id.* at 412, 385 S.E.2d at 215. "Where there is an agreement regarding the support of an adult child, the family court should not decide support issues as if there were no agreement." *Id.* at 413, 385 S.E.2d at 215. A parent may contractually obligate himself to pay educational expenses beyond the age of majority and, therefore, construction of such an agreement is a matter of contract law. *Ellis v. Taylor,* 316 S.C. 245, 449 S.E.2d 487 (1994). Even in a post-*Moseley* separation agreement merged into a divorce decree which provided for payment of college education expenses, this court held the language in the agreement was clear and unambiguous and must be given its plain meaning. *Cathcart v. Cathcart,* 307 S.C. 322, 414 S.E.2d 811 (Ct.App.1992).

As noted, the agreement of the parties was dated August 26, 1974 and the divorce decree which incorporated but did not merge the agreement was dated September 11, 1974. This was well before our supreme court announced the rule in

*Risinger* that in certain exceptional circumstances a court may order a parent to provide support to enable a child past majority to attend school. Nothing in the record indicates the father believed at the time of contracting that he was legally obligated to provide such support or that his agreement to do so was other than voluntary.

■ When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect. *Jordan v. Security Group, Inc.,* 311 S.C. 227, 428 S.E.2d 705 (1993). The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Id.*

Smith also argues Treadaway cannot bring the action because the sons are no longer minors and Smith has no legal obligation to support them. In light of our determination that the college expenses herein were a contract rather than child support, this issue is without merit.

## II. RES JUDICATA

Smith next argues that because the family court modified the agreement as to child support in 1975, 1976 and 1977, it maintains jurisdiction over these issues. He also suggests the language of the 1975 order in which the family court relieved him of any obligation to continue financing his children's secondary private education implicitly relieved him of any obligation to pay college expenses because the duties are contained in the same provision of the agreement. Treadaway argues the family court's orders did not address the college expenses determined by contract, only child support.

■ The doctrine of res judicata originated in the principle that public interest requires an end to litigation and that no one should be twice sued for the same cause of action. Under this doctrine, a final judgment on the merits in a prior action will conclude the parties and their privies in a second action based on the same claim as to the issues actually litigated and as to issues that might have been litigated in the first action. *Sub–Zero Freezer Co. v. R.J. Clarkson Co.,* 308 S.C. 188, 417 S.E.2d 569 (1992); *Foran v. USAA Casualty Ins.*

*Co.*, 311 S.C. 189, 427 S.E.2d 918 (Ct.App.1993). The doctrine requires three essential elements: (1) the judgment must be final, valid and on the merits; (2) the parties in the subsequent action must be identical to those in the first; and (3) the second action must involve matter properly included in the first action. *Owenby v. Owens Corning Fiberglas*, 313 S.C. 181, 437 S.E.2d 130 (Ct.App.1993).

 The 1975 family court order stated:

4. [Smith] shall pay one-half of the school tuition for the minor children of the parties hereto for the school year 1975–76, however, such obligation shall cease after this school year unless [Smith] consents in writing to continue to contribute one-half of the private school tuition for any future years.

Neither child had entered college yet and college education expenses were not mentioned. Therefore, Treadaway's claim was not barred by res judicata. Furthermore, the family court lacked subject matter jurisdiction and, therefore, its orders in the 1970s are not res judicata. Subject matter jurisdiction cannot be waived. *Fielden v. Fielden*, 274 S.C. 219, 262 S.E.2d 43 (1980).

## III. STATUTE OF LIMITATIONS

Smith contends the agreement is not a sealed instrument and therefore, the six year statute of limitation is applicable. Treadaway argues the contract is a sealed instrument. She argues the language clearly demonstrates the parties' intent to have a sealed instrument and so her claims as to both sons were made before the statute ran.

 Whenever it shall appear from the attestation clause or from any other part of any instrument in writing that it was the intention of the party or parties thereto that such instrument should be a sealed instrument then such instrument shall be construed to be, and shall have the effect of, a sealed instrument although no seal be actually attached thereto. S.C.Code Ann. § 19–1–160 (1976). This section creates a statutory rule of evidence and is applicable to all cases tried since its passage. *See Cook v. Cooper*, 59 S.C. 560, 38 S.E. 218 (1901). There is a twenty year statute of limitations applicable to sealed instruments. S.C.Code Ann. § 15–3–520 (Supp.

378

1995). In *South Carolina Dep't of Social Servs. v. Winyah Nursing Homes, Inc.,* 282 S.C. 556, 320 S.E.2d 464 (Ct.App. 1984), this court held a contract which contained the language "the parties hereto have set their hands and seals" and had "L.S." following the parties' signatures was a sealed instrument and subject to the twenty year statute of limitations rather than the six year statute applicable to contracts. *Id.*

■ The agreement which Treadaway and Smith entered into stated:

IN WITNESS WHEREOF, the parties have hereunto set their respective Hands and Seals in quadruplicate as of the day and year first above written.

SIGNED SEALED AND DELIVERED IN THE PRESENCE OF

[signatures of parties and witnesses]

Therefore, under South Carolina law, the agreement between the parties was a sealed instrument and Treadaway brought this action within the statute of limitations.

## IV. LACHES

Smith claims Treadaway's claims are barred by the doctrine of laches. Treadaway contends she did not know where Smith lived after 1984 and therefore, was not negligent.

■ Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done. *Hallums v. Hallums,* 296 S.C. 195, 371 S.E.2d 525 (1988). If the defense of laches is applicable, whether a claim is barred is to be determined in light of the facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party; delay alone in assertion of a right does not constitute laches. *Id.*

■ However, the statute of limitations, rather than laches, is applicable to a legal as opposed to an equitable claim. *Edens v. Edens,* 312 S.C. 488, 435 S.E.2d 851 (1993). Therefore, laches does not operate to bar a legal claim when the applicable statute of limitations has not run. *Id.* An action for breach of contract is a legal claim. *Id.*

Therefore, the order of the trial court is
**AFFIRMED.**

HOWELL, C.J., and HUFF, J., concur.