580 S.E.2d 171

**James NELSON, Jr., as guardian ad litem for Ty'Quain S. Nelson, a minor child, Appellant,**

**v.**

**QHG OF SOUTH CAROLINA, INC., d/b/a Carolina Hospital System, Quorum Health Group, Inc., Drs. Coker, Phillips, and Haswell, P.A., and Thomas W. Phillips, M.D., Defendants,**

**of whom Drs. Coker, Phillips, and Haswell, P.A. and Thomas W. Phillips, M.D., Respondents.**

**No. 3626.**

Court of Appeals of South Carolina.

Heard March 13, 2002.
Decided April 14, 2003.
Rehearing Denied May 21, 2003.

292

294

Edward L. Graham, of Florence, for Appellant.

Robert H. Hood, Hugh W. Buyck, and D. Nathan Hughey, all of Charleston, for Respondents.

ANDERSON, J.:

Ty'Quain S. Nelson's guardian ad litem brought suit against Thomas W. Phillips, M.D., Drs. Coker, Phillips, and Haswell, P.A., QHG of South Carolina, Inc., d/b/a Carolina Hospital System, and Quorum Health Group, Inc. seeking recovery for damages caused by alleged medical malpractice during Nelson's delivery. The circuit court granted the motion to dismiss on behalf of Drs. Coker, Phillips, and Haswell, P.A. and Thomas W. Phillips, M.D. Nelson appeals. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Ty'Quain S. Nelson was born on March 5, 1993. Thomas W. Phillips, M.D. was the attending obstetrician during Nelson's delivery. During delivery, a complication occurred where Nelson's shoulder became lodged behind the mother's pubic bone. This is known as shoulder dystocia. Nelson's upper and lower portions of his right-side brachial plexus nerves were injured during the delivery. The damage to the upper portion, called "Erb's palsy," involves primarily the shoulder, elbow, and their related muscles. The damage to the lower portion, known as "Klumpke's palsy," causes paralysis to the hand and results in fingers which are grossly deformed, misshapen, twisted, and contorted.

On February 26, 2001, Nelson sued Thomas W. Phillips, M.D., his medical group, Drs. Coker, Phillips, and Haswell, P.A., QHG of South Carolina, Inc., d/b/a Carolina Hospital System, and Quorum Health Group, Inc., alleging that Thomas

W. Phillips, M.D. was negligent in managing and resolving the shoulder dystocia and Drs. Coker, Phillips, and Haswell, P.A. was liable under vicarious liability. This suit was brought by Nelson's maternal grandfather and current guardian ad litem, James Nelson, Jr. Shortly after filing the summons and complaint, Nelson's current counsel discovered that Nelson's mother, Latonia Nelson, who had previously been Nelson's guardian ad litem, had filed an earlier suit involving the same injuries.

The first lawsuit, filed in 1996, was styled "Tyqun [sic] Nelson, a minor under the age of fourteen (14) years, by his duly appointed Guardian Ad Litem Latonia Nelson, vs. Carolina Women's Center [sic] and Thomas W. Phillips, M.D." During the litigation of the 1996 suit, Thomas W. Phillips, M.D. made a motion to compel Nelson to answer interrogatories and requests for production. The circuit court issued an order compelling the discovery responses within fifteen days. Nelson failed to comply, and Thomas W. Phillips, M.D. filed a motion to dismiss based upon Nelson's failure to respond. Thomas W. Phillips, M.D. also moved for summary judgment on the grounds that Nelson had failed to offer any evidence of a breach of the reasonable standard of care through an expert witness.

The circuit court held the motion to dismiss in abeyance and gave Nelson forty-five additional days "in which to identify an expert witness and to provide a summary of the witnesses [sic] anticipated trial testimony." Nelson's attorney failed to comply, and the circuit court granted Thomas W. Phillips, M.D.'s summary judgment motion because there was no expert testimony establishing Thomas W. Phillips, M.D. had breached the standard of care. The order dismissed Nelson's 1996 complaint with prejudice. However, the circuit court granted Nelson an additional thirty days to file a motion to reconsider with an expert affidavit to establish a prima facie case. Nelson did not file a motion to reconsider.

Nelson's attorney in the current case filed a notice of dismissal voluntarily dismissing Thomas W. Phillips, M.D. pursuant to Rule 41(a)(1)(A), SCRCP. Nelson's notice of dismissal expressed his intent to proceed against all the other named defendants. After dismissal of the lawsuit against

Thomas W. Phillips, M.D. pursuant to Rule 41(a)(1)(A), a motion to dismiss was filed on behalf of Drs. Coker, Phillips, and Haswell, P.A. and Thomas W. Phillips, M.D. The circuit court granted the motion to dismiss with prejudice for both Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. The circuit court ruled: (1) res judicata barred this action because the 1996 order granting Thomas W. Phillips, M.D. summary judgment was an adjudication of Nelson's case on the merits; (2) Nelson was collaterally estopped from asserting the same argument in this case because the summary judgment motion was an adjudication on the merits; and (3) under the theory of respondeat superior, a master is not liable if the servant is not liable.

## STANDARD OF REVIEW

Under Rule 12(b)(6), SCRCP, a defendant may make a motion to dismiss based upon the plaintiff's failure to state a claim constituting a cause of action. *Bergstrom v. Palmetto Health Alliance*, 352 S.C. 221, 573 S.E.2d 805 (Ct.App.2002). The trial judge may dismiss the claim if the defendant demonstrates the plaintiff has failed "to state facts sufficient to constitute a cause of action" in the pleadings filed with the court. *Williams v. Condon*, 347 S.C. 227, 232–33, 553 S.E.2d 496, 499 (Ct.App.2001) (quoting Rule 12(b)(6), SCRCP). When considering the motion to dismiss for failure to state a claim, the trial court must base its ruling solely upon the allegations made on the face of the complaint. *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999); *Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601 (1995). If the facts and inferences drawn from the facts alleged on the complaint would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper. *Brown v. Leverette*, 291 S.C. 364, 353 S.E.2d 697 (1987); *McCormick v. England*, 328 S.C. 627, 494 S.E.2d 431 (Ct.App.1997). The facts and inferences alleged on the complaint are viewed in the light most favorable to the plaintiff. *Toussaint v. Ham*, 292 S.C. 415, 357 S.E.2d 8 (1987); *Cowart v. Poore*, 337 S.C. 359, 523 S.E.2d 182 (Ct.App.1999); *Mr. G. v. Mrs. G.*, 320 S.C. 305, 465 S.E.2d 101 (Ct.App.1995).

 Dismissal of an action pursuant to Rule 12(b)(6) is appealable. *Williams*, 347 S.C. at 233, 553 S.E.2d at 500. The court of appeals applies the same standard of review that was implemented by the trial court. *Id.* In determining whether the trial court properly granted the motion to dismiss, we must consider whether the complaint, viewed in the light most favorable to the plaintiff, states any valid claim for relief. *Bergstrom*, 352 S.C. at 233, 573 S.E.2d at 811.

## *LAW/ANALYSIS*

### I. EFFECT OF VOLUNTARY DISMISSAL

Nelson argues the circuit court erred when it granted the motion to dismiss of Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. because Thomas W. Phillips, M.D. had been voluntarily dismissed from the case and lacked standing to bring the motion on his behalf. Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. argue that Nelson's notice of voluntary dismissal was ineffective because it was conditioned upon allowing for continued viability against Drs. Coker, Phillips, and Haswell, P.A., while only dismissing Thomas W. Phillips, M.D. Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. also assert the notice of voluntary dismissal was ineffective because Drs. Coker, Phillips, and Haswell, P.A. and Thomas W. Phillips, M.D. were prejudiced when the notice on the voluntary dismissal did not provide the dismissal was without prejudice. We agree with Nelson.

Rule 41 of the South Carolina Rules of Civil Procedure allows a plaintiff to voluntarily dismiss a defendant from a lawsuit:

> Subject to the provisions of Rule 23(c), of Rule 66(a), and of any statute, an action may be dismissed by the plaintiff without order of court (A) by filing and serving a notice of dismissal at any time before service by the adverse party of an answer or motion for summary judgment. . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice. . . .

Rule 41(a)(1), SCRCP.

 Under Rule 41(a)(1)(A), SCRCP, a plaintiff may dismiss an action without leave of court before the defendant

files an answer or motion for summary judgment. *Burry & Son Homebuilders, Inc. v. Ford,* 310 S.C. 529, 426 S.E.2d 313 (1992); *In re Morrison,* 321 S.C. 370, 373, 468 S.E.2d 651, 652–53 (1996) ("[U]nder the plain language of paragraph (a)(1), a plaintiff has an unconditional right to voluntarily dismiss an action anytime before an answer or motion for summary judgment has been served."). Unless otherwise stated in the notice of dismissal or stipulation, the voluntary dismissal of an action by a plaintiff with the consent of the opposing party is without prejudice. *Gamble v. State,* 298 S.C. 176, 379 S.E.2d 118 (1989). Generally, a plaintiff is entitled to a voluntary non-suit without prejudice as a matter of right unless the defendant shows legal prejudice or important issues of public policy are present. *Burry & Son Homebuilders,* 310 S.C. at 531, 426 S.E.2d at 314; *Bowen & Smoot v. Plumlee,* 301 S.C. 262, 391 S.E.2d 558 (1990); *Prime Med. Corp. v. First Med. Corp.,* 291 S.C. 296, 353 S.E.2d 294 (Ct.App.1987).

In *J.J. Lawter Plumbing v. Wen Chow Int'l Trade & Inv., Inc.,* 286 S.C. 49, 331 S.E.2d 789 (Ct.App.1985), Wen Chow hired a general contractor, Padgett, to convert a health spa into a restaurant. Padgett hired Lawter as a subcontractor to work on the project. Lawter sued Padgett and Wen Chow for nonpayment of fees. Before Padgett filed a pleading or a summary judgment motion, Lawter filed a notice of dismissal voluntarily dismissing Padgett from the suit. Wen Chow argued the notice of voluntary dismissal as to Padgett was improperly granted because Wen Chow had answered and therefore the action could not be dismissed. This court rejected Wen Chow's argument by adopting federal case law interpreting the federal version of Rule 41, which is identical to Rule 41, SCRCP. "The word 'action' in the federal rule has been interpreted to mean all of the claims against any one defendant, not necessarily all of the claims against all the defendants. Thus, a voluntary dismissal [under Rule 41] is effective against a defendant who has not answered, even though another defendant has." *Id.* at 52–53, 331 S.E.2d at 791. Citing *Wen Chow,* James Flanagan in *South Carolina Civil Procedure* 2d ed. states, "Only the defendants who answered or moved for summary judgment are unaffected by the notice of dismissal." James F. Flanagan, *South Carolina*

*Civil Procedure* 343 (2d ed.1996). "A plaintiff's motive for dismissal is generally irrelevant where the dismissal is effected by notice in the early stages of the litigation." 8 James Wm. Moore et al., *Moore's Federal Practice* ¶ 41.11 41–24 (3d ed.2002).

■ The arguments of Drs. Coker, Phillips, and Haswell, P.A. and Thomas W. Phillips, M.D. are unavailing. According to *Wen Chow*, a plaintiff may dismiss only one party to a suit because "action" only applies to the plaintiff's claims against one defendant and not all the defendants in a lawsuit. A plaintiff may make a voluntary dismissal by complying with the mandate of Rule 41(a)(1)(A), SCRCP, provided the defendant has not yet filed a pleading or summary judgment motion. Nelson's notice of dismissal was not improperly conditioned and was effective. The circuit court erred when it dismissed Nelson's lawsuit against Drs. Coker, Phillips, and Haswell, P.A. and Thomas W. Phillips, M.D. because Thomas W. Phillips, M.D. was no longer a party to the lawsuit and his motion was ineffective.

## II. Standing Of Thomas W. Phillips, M.D.

■ "A Court of law can know no other persons as parties, than those whose rights are made to appear by the record...." *M'Elwee v. House,* 17 S.C.L. (1 Bail.) 108, 109 (1828). A person without interest in the subject matter of the lawsuit has no legal standing to be heard. *Duke Power Co. v. S.C. Pub. Serv. Comm'n,* 284 S.C. 81, 326 S.E.2d 395 (1985); *Furman Univ. v. Livingston,* 244 S.C. 200, 136 S.E.2d 254 (1964).

■ This court has concluded that Thomas W. Phillips, M.D. does **not** have standing because Thomas W. Phillips, M.D. was voluntarily dismissed under Rule 41(a)(1)(A), SCRCP. Assuming **arguendo** that Thomas W. Phillips, M.D. has standing, we address other issues seriatim. Indubitably, Drs. Coker, Phillips, and Haswell, P.A. has standing to address all issues.

## III. Res Judicata And Collateral Estoppel

■ "The doctrine of res adjudicata (or res judicata) in the strict sense of that time-honored Latin phrase had its

origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action." *First Nat'l Bank v. United States Fid. & Guar. Co.*, 207 S.C. 15, 24, 35 S.E.2d 47, 56 (1945). Under this doctrine, a final judgment on the merits in a prior action will conclude the parties and their privies in a second action based on the same claim as to the issues actually litigated and as to issues that might have been litigated in the first action. *Sub-Zero Freezer Co. v. R.J. Clarkson Co.*, 308 S.C. 188, 417 S.E.2d 569 (1992); *Treadaway v. Smith*, 325 S.C. 367, 479 S.E.2d 849 (Ct.App.1996); *Foran v. USAA Cas. Ins. Co.*, 311 S.C. 189, 427 S.E.2d 918 (Ct.App.1993).

 Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between these parties. *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 512 S.E.2d 106 (1999); *Rogers v. Kunja Knitting Mills, U.S.A.*, 336 S.C. 533, 520 S.E.2d 815 (Ct.App.1999). Res judicata prevents a litigant "from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Hilton Head Ctr. of South Carolina, Inc. v. Pub. Serv. Comm'n of South Carolina*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987); *accord Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 512 S.E.2d 106 (1999). "Res judicata is the branch of the law that defines the effect a valid judgment may have on subsequent litigation between the same parties and their privies. Res judicata ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." James F. Flanagan, *South Carolina Civil Procedure* 642 (2d ed.1996).

 To establish res judicata, the defendant must prove three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit. *Sealy v. Dodge*, 289 S.C. 543, 347 S.E.2d 504 (1986); *Rogers*, 336 S.C. at 537, 520 S.E.2d at 817; *Owenby v. Owens Corning Fiberglas*, 313 S.C. 181, 437 S.E.2d 130 (Ct. App.1993). Even when the defendant meets all of the re-quired elements, res judicata will not be applied "where it will contravene other important public policies; the courts must

weigh the competing public policies." *Johns v. Johns,* 309 S.C. 199, 203, 420 S.E.2d 856, 859 (Ct.App.1992).

 Collateral estoppel differs from res judicata. This distinction is explained in *Beall v. Doe,* 281 S.C. 363, 315 S.E.2d 186 (Ct.App.1984):

> The doctrines of *res judicata* and collateral estoppel are ... two different concepts. A final judgment on the merits in a prior action will conclude the parties and their privies under the doctrine of *res judicata* in a second action based on the same claim as to issues actually litigated and as to issues which might have been litigated in the first action. Under the doctrine of collateral estoppel, ... the second action is based upon a different claim and the judgment in the first action precludes relitigation of only those issues "actually and necessarily litigated and determined in the first suit."

*Id.* at 369 n. 1, 315 S.E.2d at 190 n. 1.

 "Under the doctrine of collateral estoppel, once a final judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit are precluded as to the parties and their privies in any subsequent action based upon a different claim." *Richburg v. Baughman,* 290 S.C. 431, 434, 351 S.E.2d 164, 166 (1986); *see also State v. Bacote,* 331 S.C. 328, 330, 503 S.E.2d 161, 162 (1998) (" 'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.' "); *McNaughton–McKay Elec. Co. of N.C. v. Andrich,* 324 S.C. 275, 482 S.E.2d 564 (Ct.App.1997) (noting that collateral estoppel will bar relitigation of an issue that was actually litigated and necessary to the outcome of the prior lawsuit). A party may assert nonmutual collateral estoppel to thwart relitigation of a previously litigated issue unless the party sought to be precluded did not have a full and fair opportunity to litigate the issue in the first proceeding, or unless other circumstances justify providing the party an opportunity to relitigate the issue. *Wade v. Berkeley County,* 330 S.C. 311, 498 S.E.2d 684 (Ct.App.1998).

 The factors to consider in determining whether the defense of collateral estoppel exists and whether the issues were actually litigated in the first suit include: whether privity exists, whether the doctrine is used offensively or defensively, and whether the party adversely affected had a full and fair opportunity to litigate the relevant issue effectively in the prior action. *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). The party asserting collateral estoppel must prove that the issue was actually litigated and directly determined in the prior action and that the matter or fact directly in issue was necessary to support the first judgment. *Carrigg v. Cannon*, 347 S.C. 75, 552 S.E.2d 767 (Ct.App.2001); *Beall v. Doe*, 281 S.C. 363, 315 S.E.2d 186 (Ct.App.1984). Only a party to a prior action or one in privity with the party can be precluded from relitigating an issue on the basis of offensive collateral estoppel. *Carrigg*, 347 S.C. at 80, 552 S.E.2d at 770.

There are numerous exceptions to the application of res judicata and collateral estoppel. In *Pye*, this court adopted the Restatement (Second) of Judgments section 28, which states:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action;

the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Pye,* 325 S.C. at 437–38, 480 S.E.2d at 460–61.

In *Beall v. Doe,* this court adopted section 29 of the Restatement (Second) of Judgments:

A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:

(1) Treating the issues as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

(5) The prior determination may have been affected by relationships among the parties to the first action that are

not present in the subsequent action, or apparently was based on a compromise verdict or finding;

(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

*Beall,* 281 S.C. at 371, 315 S.E.2d at 190–91.

Nelson contends the circuit court erred when it granted the motion to dismiss on res judicata and collateral estoppel grounds because the parties in the two actions were not the same, the summary judgment order in the first case was not an adjudication on the merits, an order entered into by consent does not trigger res judicata or collateral estoppel, public policy considerations preclude the use of res judicata and collateral estoppel, and Nelson did not get the opportunity to fully and fairly litigate the issues in the first action.

## A. Identity of the Parties

Nelson asserts the parties are not the same in the two lawsuits because Nelson is represented by a different guardian ad litem in the respective suits and the 1996 complaint named the Carolina Women's Center and Thomas W. Phillips, M.D. as defendants.

For determining whether res judicata applies, the identity of the parties in the first lawsuit also includes persons in privity with the named parties. *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). One not a party to a prior action can be precluded from relitigating the issue only if he is in privity with a party to the prior action against whom an adverse finding is made. *Roberts v. Recovery Bureau, Inc.,* 316 S.C. 492, 450 S.E.2d 616 (Ct.App.1994). In regard to res judicata or collateral estoppel, privity "does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation." *Wyndham v. Lewis,* 292 S.C. 6, 8, 354 S.E.2d 578,

579 (Ct.App.1987). "Privity" means one so identified in interest with another that he represents the same legal right. *Carrigg v. Cannon*, 347 S.C. 75, 552 S.E.2d 767 (Ct.App.2001). In *Wade v. Berkeley County*, 330 S.C. 311, 498 S.E.2d 684 (Ct.App.1998), this court discussed privity by stating:

> Privity deals with a person's relationship to the subject matter of the previous litigation, not to the relationships between entities. To be in privity, a party's legal interests must have been litigated in the prior proceeding. Having an interest in the same question or in proving or disproving the same set of facts does not establish privity. Nor is privity found when the litigated question might affect a person's liability as a judicial precedent in a subsequent action.

*Id.* at 317, 498 S.E.2d at 687 (citations omitted).

The viability and efficacy of one guardian ad litem as juxtapose to a later appointed guardian ad litem in two different suits is novel. In *Stevens v. Kelley*, 57 Cal.App.2d 318, 134 P.2d 56 (1943), a minor child brought an action through her guardian ad litem against her alleged natural father to establish paternity and obtain child support. The child's mother had previously brought a suit to establish paternity against the same man when the minor child was a three-month-old baby. The mother entered into an agreement to settle the suit for a cash payment. The court found that according to California statute, the mother was the child's guardian when the mother brought the first suit. The child argued that she was not bound by the judgment in the first case because she was not a party in the first action and the first case was compromised without the consent of the court in which it was tried. The court found the child's arguments to be meritless:

> Plaintiff's rights, having been determined in an action in her behalf brought by her mother, cannot be again litigated in an action brought by her guardian ad litem. . . .
>
> If the present judgment were allowed to stand, we would have two judgments of the same court, adjudicating identical rights between the same parties in interest, the second the exact opposite of the first. Both cannot be valid. Where the defense of former adjudication was pleaded and

the earlier of the judgments was established by sufficient proof, it had to prevail over the later judgment unless it was . . . vulnerable to attack upon equitable grounds.

*Id.* at 59. The court additionally found the mother's actions in the first suit did not improperly compromise the child's interests. *Id.* at 61.

 Here, the minor child was the injured party in interest in both lawsuits. The identity of the guardian changed, but the basic facts underlying the cause of action remained identical and required the presence of the child. There is no question that a minor ward and her guardian are in privity with each other. *First Nat'l Bank of Greenville v. United States Fid. & Guar. Co.,* 207 S.C. 15, 26, 35 S.E.2d 47, 57 (1945) ("[W]e do not think there could be a much clearer case of *mutual* relationship than that existing between a ward and her guardian.").

 Res judicata applies to bar the action against Thomas W. Phillips, M.D., who was the named person in the first lawsuit.

## B. Adjudication on the Merits

Nelson asserts that the circuit court dismissed his first complaint on procedural grounds because his attorney failed to comply with discovery orders; therefore, the order dismissing the first case was not an adjudication on the merits and res judicata and collateral estoppel do not apply to bar this case.

 Medical malpractice is the failure of a physician to exercise that degree of care and skill which is ordinarily employed by the profession generally, under similar conditions and in like surrounding circumstances. *Jernigan v. King,* 312 S.C. 331, 440 S.E.2d 379 (Ct.App.1993); *Welch v. Whitaker,* 282 S.C. 251, 317 S.E.2d 758 (Ct.App.1984). A plaintiff must show the physician failed to exercise the degree of care and skill which is ordinarily employed by the profession under similar conditions and in like circumstances. *Keaton v. Greenville Hosp. Sys.,* 334 S.C. 488, 514 S.E.2d 570 (1999). In South Carolina, to sustain a cause of action in a medical malpractice case, the plaintiff is required to establish the relevant standard of care and a breach of the standard of care by expert

witness testimony. *Pederson v. Gould,* 288 S.C. 141, 341 S.E.2d 633 (1986); *Botehlo v. Bycura,* 282 S.C. 578, 320 S.E.2d 59 (Ct.App.1984). *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 487 S.E.2d 596 (1997), articulates the quintessential mandate thrust upon a plaintiff in a medical malpractice case. *Gooding* inculcates:

> [T]he plaintiff must present (1) evidence of the generally recognized practice and procedures that would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances and (2) evidence that the defendant doctor departed from the recognized and generally accepted standards, practices, and procedures in the manner alleged by the plaintiff. Further, unless the subject is a matter of common knowledge, the plaintiff must use expert testimony to establish both the standard of care and the defendant's failure to conform to that standard.

*Id.* at 254, 487 S.E.2d at 599.

A case that is dismissed "with prejudice" indicates an adjudication on the merits and, pursuant to res judicata, prohibits subsequent litigation to the same extent as if the action had been tried to a final adjudication. *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Nunnery v. Brantley Constr. Co.,* 289 S.C. 205, 345 S.E.2d 740 (Ct.App.1986). When an action has been dismissed with prejudice, the judgment operates in subsequent litigation to the same extent as if the action had been tried to a final adjudication. *Jones v. City of Folly Beach,* 326 S.C. 360, 483 S.E.2d 770 (Ct.App.1997). If the first case is dismissed with prejudice on purely procedural grounds without a consideration of the underlying merits of the action, then the party is barred from asserting collateral estoppel or res judicata. *Id.; see also Sealy v. Dodge,* 289 S.C. 543, 347 S.E.2d 504 (1986) (holding that a medical malpractice action was not barred by res judicata where the initial action did not involve an adjudication on the merits but instead involved the child's capacity to sue and whether there was an improper joinder of the causes of action).

Nelson contends that the circuit court's dismissal was for failure to comply with the court's extensions of time to present

expert witness testimony and was procedural rather than substantive. The circuit court, however, did not dismiss the case for failure to comply with its extensions in a timely fashion, but ultimately dismissed the case because of Nelson's failure to present an expert. South Carolina law requires an expert witness in medical malpractice cases. When the circuit court dismissed the case for lack of expert testimony, it was a dismissal on the merits because Nelson failed to sustain his burden of proof. The circuit court did not err when it dismissed Thomas W. Phillips, M.D. because the identity of the parties in the two suits was the same and the first lawsuit was disposed of by an adjudication on the merits.

■ We conclude granting summary judgment in favor of a physician in a medical malpractice case because of the plaintiff's failure to produce an expert witness as to the applicable standard of care and departure from the standard of care by the physician is an adjudication of the case on the merits. We reject the contention of Nelson that this factual scenario is **only** a discovery delinquency and does not rise to the level of a disposition on the merits.

Our decision on this issue is efficacious as to Thomas W. Phillips, M.D., but **not** as to Drs. Coker, Phillips, and Haswell, P.A.

### C. Consent Order

Nelson argues that when his counsel consented to the summary judgment order in the first action, the consent barred the use of collateral estoppel or res judicata in this action.

■ Because a consent judgment has substantially the same effect as any other judgment rendered in the ordinary course, it is generally entitled to the defense of res judicata. 46 Am.Jur.2d *Judgments* § 222 (1994). However, even in consent orders, the public policy underlying res judicata may have to yield to other public policies. *Johns v. Johns*, 309 S.C. 199, 420 S.E.2d 856 (Ct.App.1992); James F. Flanagan, *South Carolina Civil Procedure* 654 (2d ed.1996). In *Johns*, a husband and wife signed a consent order where the family court found they were married at common law and ordered their legal separation. At the time the parties entered into

the consent order, the husband was married to another person. The wife brought suit against the husband seeking a divorce, custody of the couple's child, an increase in alimony and child support, and attorney's fees. The husband contested the divorce, arguing the parties were not married. The wife sought to use the consent order declaring they were married at common law to bar the husband's defense under res judicata and collateral estoppel grounds. This court did not allow the wife to assert res judicata or collateral estoppel to bar the husband's defense because public policy declaring bigamous marriages void overrode the policy concerns for res judicata.

*Johns* is inapposite to this case, however. Nelson misconstrues the nature of his consent in the first case. The circuit court imposed monetary sanctions against Nelson's counsel for discovery abuse. Nelson's counsel consented to the imposition of monetary sanctions. He did not consent to the grant of the summary judgment motion. In *Johns,* the consent order was directly on point as to what was in dispute in the second case. There was no effective consent given allowing the entry of summary judgment and the general rule disallowing the use of res judicata or collateral estoppel for consent orders does not apply.

For the sake of clarity, this conclusion applies **only** to Thomas W. Phillips, M.D., but not to Drs. Coker, Phillips, and Haswell, P.A.

### D. Inadequate Representation in the First Suit

Nelson contends that his counsel's representation in the first suit was inadequate so the doctrines of res judicata and collateral estoppel should not apply.

In *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997), the appellant raised the issue that collateral estoppel should not apply because of an inadequate defense and failing to identify witnesses in the first action. This court rejected that argument stating:

> [Appellant] presented no affidavits or depositions to the trial court regarding the purported testimony of the alleged additional witnesses. Further, prior to the federal action, both parties had a substantial amount of time to prepare for

trial and conduct extensive discovery. Both cases had been on the docket for well over a year prior to the [first action].
*Id.* at 439, 480 S.E.2d at 461. Inadequate representation is not a basis for attacking res judicata. *In re Fuhrman,* 118 B.R. 72 (E.D.Mich.1990). In *Dennis v. First State Bank of Texas,* 989 S.W.2d 22 (Tex.App.1998), the Texas Court of Appeals stated:

> To allow appellants another chance to relitigate the issues that should have been brought in the [first suit] would circumvent the purpose behind the doctrine of res judicata and would allow a losing party to relitigate a cause of action based solely on an assertion of inadequate representation. The doctrine of res judicata does not allow for such a result.

*Id.* at 28.

Nelson's attorney had ample time to develop witnesses. The circuit court even granted additional days after the entry of summary judgment to present an expert witness with a motion for reconsideration.

While we sympathize with Nelson and agree that the first attorney's conduct in handling the case was reprehensible, the proper course of action to rectify the attorney's behavior is legal malpractice and not punishing the opposing party by suspending the operation of res judicata or collateral estoppel.

For the sake of clarity, this conclusion applies **only** to Thomas W. Phillips, M.D., but not to Drs. Coker, Phillips, and Haswell, P.A.

### E. Policy Considerations

Nelson asserts public policy considerations should bar Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. from invoking the doctrines of collateral estoppel and res judicata.

The doctrines of collateral estoppel and res judicata exist to "reduce litigation and conserve the resources of the court and litigants and it is based upon the notion that it is unfair to permit a party to relitigate an issue that has already been decided." *State v. Bacote,* 331 S.C. 328, 331, 503 S.E.2d 161, 163 (1998). Even when the elements of res judicata and collateral estoppel have been met, they will not be rigidly or

mechanically applied, and the application of the doctrines may be precluded where unfairness or injustice results, or public policy requires it. *Id.; Carrigg v. Cannon,* 347 S.C. 75, 552 S.E.2d 767 (Ct.App.2001). "Thus application of res judicata will not be applied where it will contravene other important public policies; the courts must weigh the competing public policies." *Johns v. Johns,* 309 S.C. 199, 203, 420 S.E.2d 856, 859 (Ct.App.1992). We recognize that there have been instances when collateral estoppel or res judicata have not been invoked for countervailing public policy concerns. *See Bacote,* 331 S.C. at 331, 503 S.E.2d at 163 (declining to give collateral estoppel effect to proceedings which occur during an administrative hearing for a driver's license revocation); *Shelton v. Oscar Mayer Foods Corp.,* 325 S.C. 248, 481 S.E.2d 706 (1997) (finding that giving administrative hearings held in front of the Employment Security Commission collateral estoppel effect would frustrate the purposes of the Employment Security Commission); *Johns,* 309 S.C. at 203, 420 S.E.2d at 859 (refusing to apply a consent order entered by the family court finding husband and wife married at common law because giving the order collateral estoppel effect would violate the State's policy finding bigamous marriages void as mandated by statute). However, in these cases, collateral estoppel was in conflict with existing public policy concerns.

In *Bacote* and *Shelton,* the public policy weighed against res judicata was the efficiency and speed of administrative procedures. In *Johns,* the policy of res judicata was in direct contravention with a statutorily expressed policy prohibiting bigamous marriages. In this case, Nelson merely states it would be unfair to impose collateral estoppel or res judicata without expressing what public policy considerations are violated. Since we can see no existing public policy concerns in preventing litigation for failure to provide sufficient proof in the first action, we find the summary judgment order in the first action has collateral estoppel and res judicata effect which does not run contrary to any public policy. Consequently, the circuit court was correct in finding the second suit against Thomas W. Phillips, M.D. was barred by res judicata and collateral estoppel.

For the sake of clarity, this conclusion applies **only** to Thomas W. Phillips, M.D., but not to Drs. Coker, Phillips, and Haswell, P.A.

## IV. MASTER-SERVANT LIABILITY

Nelson argues the circuit court erred when it found that Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. were in a master-servant relationship and the master could not be found liable when the servant was not liable. We agree.

██ Normally, a master cannot be held liable for the actions of the servant if its liability is based solely upon the actions of its servant. *Hundley v. Rite Aid of South Carolina, Inc.*, 339 S.C. 285, 529 S.E.2d 45 (Ct.App.2000). However, when a master's liability is based on its own conduct or the conduct of a non-defendant servant, an exoneration of its defendant servant does not absolve it from liability. *Id.*

In *Rite Aid*, the plaintiff sued the pharmacy and the pharmacist for damages that occurred from an improperly filled prescription. The jury returned a verdict in favor of the plaintiff, awarding the plaintiff punitive damages against the pharmacy, but not against the pharmacist. Rite Aid argued it could not be held liable for punitive damages when the jury failed to find the pharmacist's action was willful because its liability was predicated on the actions of its servant. This court disagreed, finding that the allegations in the complaint that Rite Aid negligently supervised the pharmacist were a separate basis of liability independent of the pharmacist's liability.

██ We have reviewed the complaint in this case and, giving Nelson the benefit of all reasonable inferences, as we must when considering a motion to dismiss, we find that the claims against Drs. Coker, Phillips, and Haswell, P.A. regarding the sufficiency of its medical record keeping is an independent basis of liability separate from Thomas W. Phillips, M.D.'s liability. Therefore, Nelson may maintain the suit against Drs. Coker, Phillips, and Haswell, P.A., even though Thomas W. Phillips, M.D. is not liable, due to the entry of the summary judgment motion and Nelson voluntarily dismissing Thomas W. Phillips, M.D.

This holding does not run afoul of either of the cases cited by Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. In *Rookard v. Atlanta & Charlotte Air Line R.R.*, 84 S.C. 190, 65 S.E. 1047 (1909), the plaintiff sued Atlanta for damages which occurred in a railroad crossing accident. Southern Railroad Company, a lessee of Atlanta, was operating the rail line at the time of the accident. The court set forth the principle that "[a] judgment on the merits in favor of the agent is a bar to an action against the principal for the same cause, because the principal's liability is predicated upon that of the agent." *Id.* at 192, 65 S.E. at 1047. The same principle is espoused in *Logan v. Atlanta & Charlotte Air Line R.R.*, 82 S.C. 518, 64 S.E. 515 (1909): "Where an agent is sued, and, after trial on the merits, the issue is determined against the plaintiff, the principal, though not a party to the suit, can avail himself of the judgment as a bar, when sued by the same plaintiff on the same cause of action." *Id.* at 523, 64 S.E. at 516. However, both of these cases refer to barring liability for the master when the servant is found not liable for the same cause of action brought against the master. In this case, negligence in keeping medical records and medical record procedures are separate from Thomas W. Phillips, M.D.'s potential liability. *Rookard* and *Logan* are not germane.

## V. ADDITIONAL SUSTAINING GROUNDS

Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. assert as an additional sustaining ground that Nelson's suit is barred because it violates the statute of repose. We disagree.

The complaint alleges the negligent medical treatment arising from Nelson's delivery occurred on March 5, 1993. The complaint was filed almost eight years later on February 26, 2001.

The time limit to bring a cause of action by a minor in a medical malpractice action is:

(D) Notwithstanding the provisions of Section 15–3–40, if a person entitled to bring an action against a licensed health care provider acting within the scope of his profession is under the age of majority at the date of the treatment, omission, or operation giving rise to the cause of action, the time period or periods limiting filing the action are not

tolled for a period of more than seven years on account of minority, and in any case more than one year after the disability ceases. Such time limitation is tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor.

S.C.Code Ann. § 15–3–545 (Supp.2002).

Thomas W. Phillips, M.D. and Drs. Coker, Phillips, and Haswell, P.A. contend that there is no allegation of fraud or collusion by the parent or guardian with the defendants or their insurance companies and therefore the statute clearly bars the suit.

 This court has discretion on whether to address additional sustaining grounds. "[A] respondent—'the winner' in the lower court—may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000). "An appellate court may not rely on Rule 220(c) SCACR, when the reason [supporting the additional sustaining ground] does not appear in the record, or when the court believes it would be unwise or unjust to do so in a particular case. It is within the appellate court's discretion whether to address any additional sustaining grounds." *Id.* at 420, 526 S.E.2d at 723. "While the current rules do not require the respondent to present an issue to the lower court in order to raise it as an additional sustaining ground, an appellate court is less likely to rely on such a ground when the respondent has failed to present it to the lower court." *Id.* at 421, 526 S.E.2d at 724.

 We decline to address this issue in the present case because the issue was presented by Thomas W. Phillips, M.D.'s motion to dismiss, and therefore Drs. Coker, Phillips, and Haswell, P.A. lacked standing to argue this issue in front of the circuit court and it would be inequitable for us to address this issue.

### CONCLUSION

We hold that pursuant to Rule 41(a)(1)(A), SCRCP, a plaintiff may dismiss an action without order of court by filing and

serving a notice of dismissal before service by the adverse party of an answer or notice of appearance. A voluntary dismissal under Rule 41(a)(1)(A) is efficacious against a defendant who has not answered or made an appearance, even though another defendant has answered and made an appearance. Once a voluntary dismissal under Rule 41(a)(1)(A) has been filed and served before service by the adverse party of an answer or notice of appearance, the circuit court lacks jurisdiction over the dismissed party and the dismissed party has no **standing** to subsequently file a motion to dismiss.

We rule that a minor is the plaintiff in an action and the fact that there are two different guardians ad litem is irrelevant to the privity element in a res judicata/collateral estoppel analysis.

We REVERSE the order of the circuit judge dismissing **"Drs. Coker, Phillips, and Haswell, P.A."** with prejudice and RE-MAND the case against **"Drs. Coker, Phillips, and Haswell, P.A."** for further proceedings consistent with this opinion.

Finally, we REVERSE the order of the circuit judge dismissing Thomas W. Phillips, M.D. with prejudice because the plaintiff had previously filed a voluntary dismissal of Thomas W. Phillips, M.D. under Rule 41(a)(1)(A), SCRCP.

**REVERSED and REMANDED.**

HUFF, J., and MOREHEAD, Acting Judge, concur.